Dear Ms. Thomas:
This office is in receipt of your request for an opinion of the Attorney General in regard to the composition of the Opelousas Municipal Civil Service Commission. You indicate the City of Opelousas Municipal Civil Service Commission was created in 1962 pursuant to Art XIV, Sec. 15 of the 1921 Constitution. That Constitutional Article provided that a city exceeding 10,000 in population could adopt the provisions of the Article, and the City of Opelousas adopted the "civil service law" and the three member commission. Article XIV, Section 15 of the Constitution of 1921 was replaced by Article X, Section 4 of the Constitution of 1974. However, the ordinance adopting the Civil Service System in Opelousas in 1962 has not been amended by the Governing Authority, and the establishment of the System was not an election to be governed by Art. X, Sec. 14 of the Constitution of 1974 since predating that Article.
You ask whether the present composition of the three members of the Opelousas Municipal Civil Service Commission is proper, or does Article X, Section 14 of the Constitution of 1974 require the composition be increased from three to five members.
You also indicate one member of the Commission who has served for six years will have his term expire on April 2, 1996. The Governing Authority is interested in submitting additional names for replacement of this member to the Civil Service Board, but inasmuch as the Commissioner is willing to serve another term, there is a concern whether others may be nominated when it is provided there shall not be removal except for cause and an opportunity for a hearing.
You ask if it is legally possible for the Governing Authority to decline to reappoint this commissioner without showing just cause of some wrong doing on his part.
We would conclude that the three member composition of the Opelousas Municipal Civil Service Commission is proper inasmuch as it was created pursuant to Article XIV, Sec. 15 of the Constitution of 1921 and prior to the 1974 Constitutional requirement of five members. The 1974 Constitution in Article 10, Section 14 provides that the cities within the designated population range "may elect to be governed by this Part" following an approving vote of the electorate. We do not find this pertinent to a municipality that already has an existing Civil Service Commission in accordance with the Constitution of 1921. Therefore, there is no need for an election or compliance with this Article.
We find support for this conclusion in Atty. Gen. Op. No. 75-1024. While the question presented there was the validity of a residency requirement for civil service, this office stated, "Article X, Section 15 of the Constitution of 1974 provides that municipal civil service rules in effect before the adoption of the new Constitution may remain in effect."
Atty. Gen. Op. No. 77-1696, which questioned the validity of the requirement that city employees, civil service and non-civil service, must be residents of the municipality, in upholding the requirement found Atty. Gen. Op. No. 75-1024 was correct and further relied upon Municipal Civ. Serv. Com'n v.Myers, 348 So.2d 1334 (La.App. 1977).
In the Myers case the court was presented with the issue of the validity of the requirement of the Civil Service Commission that a municipal employee be a resident, and we note that in reaching the conclusion that there could be a requirement of residency, the court observed that the Municipal Civil Service Commission was established by public referendum pursuant to La. Const. of 1921, Art. XIV, Sec. 15 and retained by La. Const. of 1974 in Art. X, Sec. 15. Therefore, the power of the Commission to make regulations having the force of law was also retained by the new Constitution.
Accordingly, we feel the composition of the Commission created by ordinance before the adoption of the 1974 Constitution would be retained.
In regard to your question as to the legality of the Governing Authority submitting additional names for consideration for appointment for the position held by a present member whose term will expire without finding cause for his removal, we find nothing to prevent submission of other names.
We find a distinction between an individual being removed for cause during his term and the individual who is not reappointed at the conclusion of his term. The latter is not being removed but simply not reappointed for an additional term. To hold to the contrary would mean any appointment would have to continue for as long as the individual cared to serve unless shown to have committed some wrong doing. That would make the designation of a term meaning less.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: ______________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR